**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ X

ANA PENA, on behalf of herself and on behalf of     :     Civil Action No. 15-CV-3624 (JCF)
other similarly-situated individuals,               :
                                                    :
                              Plaintiff,            :     **DECLARATION OF**
                                                    :     **DAVID E. GOTTLIEB IN**
                                                    :     **SUPPORT OF (1) PLAINTIFF'S**
        -against-                                   :     **UNOPPOSED MOTION FOR**
                                                    :     **FINAL APPROVAL OF CLASS**
93 LUDLOW ST., INC. a.k.a THE DL a.k.a.             :     **SETTLEMENT AND**
DINNER ON LUDLOW, 115 AVENUE C LLC,                 :     **ENHANCEMENT AWARD TO**
PAUL SERES, in his individual and professional      :     **PLAINTIFF AND (2)**
capacities, ROBERT NOWAK, in his individual and     :     **PLAINTIFF'S UNOPPOSED**
professional capacities, ALEKSANDRA DROZD, in       :     **MOTION FOR APPROVAL OF**
her individual and professional capacities, TOMASZ  :     **ATTORNEYS' FEES AND**
DYSZKIEWICZ, in his individual and professional     :     **EXPENSES FOR CLASS**
capacities,                                         :     **SETTLEMENT**
                                                    :
                              Defendants.           :
------------------------------------------------------------------ X

      **DAVID E. GOTTLIEB, ESQ.**, an attorney duly admitted to practice before this court,

hereby affirms under penalty of perjury as follows:

      1.      I am a Partner at the law firm Wigdor LLP ("Class Counsel")[1], attorney for

Plaintiff Ana Pena ("Plaintiff" or "Ms. Pena") in the above-captioned matter.  I submit this

Declaration in support of: (1) Plaintiff's Unopposed Motion for Final Approval of Class

Settlement and Enhancement Award to Plaintiff; and (2) Plaintiff's Unopposed Motion for

Approval of Attorneys' Fees and Expenses for Class Settlement.  For the reasons set forth below,

in the accompanying supporting memoranda of law, and upon the exhibits attached hereto,

Plaintiff's motions should be granted in their entirety.

---

[1]      Any capitalized terms not defined herein are defined in Plaintiff's Unopposed Motion for Final Approval of
Class Settlement and Enhancement Award to Plaintiff and Plaintiff's Unopposed Motion for Approval of Attorneys'
Fees and Expenses for Class Settlement.

## **ATTACHED DOCUMENTS**

2.      A true and accurate copy of the fully-executed Settlement Agreement and Release (the "Settlement") in this action is attached hereto as **Exhibit A**.

3.      A Proposed Final Order Granting Approval of Class Settlement, Enhancement Award to Plaintiff, and Attorneys' Fees and Expenses to Class Counsel ("Proposed Order") is attached hereto as **Exhibit B**.

4.      A true and accurate copy of the Amended Complaint filed in this action on or about May 28, 2015 (the "Complaint") is attached hereto as **Exhibit C**.

5.      A true and accurate copy of Defendants' Answer to the Complaint filed in this action on or about June 25, 2015 (the "Answer") is attached hereto as **Exhibit D**.

6.      A true and accurate copy of the Notice of a Proposed Settlement of Class Action Lawsuit and Fairness Hearing (the "Notice") is attached hereto as **Exhibit E**.

7.      A true and accurate copy of a Declaration of Mark Patton of Garden City Group, Inc. is attached hereto as **Exhibit F**.

8.      True and accurate copies of seven representative retainer agreements for Wigdor LLP's hourly paying clients in 2013, 2014, 2015 and 2016 (with client names and identifying information redacted) ("Representative Redacted Retainer Agreements") are attached hereto as **Exhibit G**.

9.      A true and accurate copy of the declaration I submitted (excluding supporting exhibits) in support of a fee application and the court order approving the fee application in the matter of Kule Rubin, et al. v. Bahari Group Limited, et al., No. 11 Civ. 2424 (TPG) (S.D.N.Y. November 15, 2012) is attached hereto as **Exhibit H**.

10.     A true and accurate copy of the court order approving the fee application in the matter of <u>Dana Byrne, et al. v. RMJM, Inc. et al.</u>, No. 12 Civ. 8203 (AT) (S.D.N.Y. October 21, 2013) is attached hereto as **Exhibit I**.

11.     A true and accurate copy of the affidavit submitted by Douglas H. Wigdor (excluding supporting exhibits) in support of a fee application and the court order approving the fee application in the matter of <u>Adler, et al. v. 20/20 Companies, et al.</u>, No 09 Civ. 439 (LDW)(ARL) (E.D.N.Y. Sept. 7, 2012 and Sept. 10, 2012), is attached hereto as **Exhibit J**.

12.     A true and accurate copy of a declaration I submitted (excluding supporting exhibits) in support of a fee application and the court order approving the fee application in the matter of <u>Munir v. Sunny's Limousine Service, Inc., et al.</u>, No. 13 Civ. 1581 (VSB) (S.D.N.Y. Jan. 8, 2015) is attached hereto as **Exhibit K**.

13.     A true and accurate copy of the court order approving the fee application in the matter of <u>Cordero, et al. v. New York Institute of Technology</u>, No. 12 Civ. 3208 (GRB) (E.D.N.Y. Mar. 17, 2016) is attached hereto as **Exhibit L**.

14.     A true and accurate copy of the court order that approved me, David E. Gottlieb, at an hourly billing rate of $600 in the matter of <u>Burgos v. Lex 70 LLC, et al.</u>, No. 14 Civ. 9784 (JMF) (S.D.N.Y. May 29, 2015) is attached hereto as **Exhibit M**.

15.     A true and accurate copy of the time and expense report (with privileged information redacted) for Wigdor LLP in this matter is attached hereto as **Exhibit N**.[2]

16.     True and accurate copies of the receipts for the expenses incurred by Wigdor LLP in this matter are attached hereto as **Exhibit O**.

---

[2]     These records are redacted for privilege purposes but simultaneous with this filing, un-redacted copies will be delivered to the Court.

## FACTUAL REPRESENTATIONS FROM COUNSEL

### Pre-Litigation Investigation and Conditional Certification

17.     Prior to filing the class Complaint and immediately following its filing, Class Counsel interviewed Plaintiff about her job duties for Defendants, how much work she performed, Defendants' compensation practices, including their practices with respect to tip pooling and private event gratuity allocation and distribution, and other information relevant to her claims.

18.     Following these interviews and discussions, Class Counsel obtained and reviewed documentation, performed a substantial amount of legal research, and determined that Plaintiff appeared to have legally cognizable claims, and that an action should be pursued on her behalf.

19.     Robert Nowak was originally named as a defendant in this action.  Defendants have represented that Mr. Nowak is not a principal, member, officer or director of any of the company defendants, and is not currently employed by them.  The Parties have agreed to discontinue this action as against Mr. Nowak, and he will not participate in this settlement.

20.     On May 8, 2015, Plaintiff filed the Complaint in this action.  See Dkt. No. 1.

21.     On May 28, 2015, Plaintiff filed the Amended Complaint, including individual claims for retaliation.  See Dkt. No. 13; Ex. C.

22.     On June 25, 2015, Defendants filed an Answer denying all material allegations. See Dkt. No. 17.

23.     Thereafter, the Parties engaged in extensive discovery over a period of nearly six months.  During this time, Class Counsel spent a significant amount of time reviewing the over **150,000 pages** of documents produced by Defendants to evaluate the strengths and weaknesses of the case and responsibly recommend settlement.  Specifically, Defendants provided Class

Counsel with nearly four years of records dating back to the opening of Defendant 93 Ludlow St.,

Inc. a.k.a The DL a.k.a. Dinner on Ludlow ("the DL") in 2013, which include, *inter alia*:

- Wage notices distributed to Plaintiff Ana Pena.

- Thousands of email exchanges, extracted from custodian accounts of the named Defendants, payroll supervisors from the DL, DL Service Employees, Private Event customers and Private Event promoters, and DL landlords and other neighborhood tenants.

- "Employee Payroll" spreadsheets, which detail, *inter alia*, the hours worked, paycheck date and pay rate, for all Class Members.

- Private Event contracts, receipts, correspondence, proposals, staffing requests, and payment records including contracts and invoices for Private Events that occurred during the Class Period.

- Daily "Payroll Worksheets" spreadsheets depicting hours worked and tips received, for all Class Members at the DL.

- Daily "tip sheets" for the DL for the duration of the Class Period.

- DL policies, insurance contracts, job descriptions, employment applications, resumes and various tax return documents.

24.    This information and data was reviewed and analyzed by Class Counsel with

involvement from Plaintiff to determine the total amount of estimated damages for Service

Employees during the Class Period.

25.    For example, to determine the potential amount of tips which were paid to security

and management personnel that should have been paid to Service Employees, Class Counsel

calculated the total tips collected during the Class Period by each of the independent contractors

and door people using tip sheets, Defendants' class list, and "tips," "hours" and "wages" data

produced by Defendants.

26.     From the documents and data, Class Counsel determined, *inter alia,* the total amount of tips which should have been paid to Service Employees but were distributed to these other employees.

27.     Similarly, to determine the potential shortfall in gratuities received by Service Employees versus the Service Charges paid by Private Event customers, Class Counsel reviewed tens of thousands of pages of documents to cross-check between correspondence, receipts, Private Event contracts, Private Event proposals, and "Payroll Worksheets" showing "administrative charges" and/or tips distributed for each Private Event.   These documents were produced in a virtual "dump" in no particular order or categorization, so Class Counsel first had to expend substantial time "charting" the documents, cataloguing each one by date, Private Event customer, Service Charge, and other key information, to come up with an exhaustive list of each Private Event held at the DL during the Class Period.

28.     After this categorization was complete, Class Counsel had identified approximately 500 unique Private Events during the Class Period.  From this data and information, and discussions with Defense Counsel as to which Private Events actually occurred, which in turn required parsing out duplicate events and events that were scheduled but never occurred, Class Counsel determined, *inter alia*, (i) the total amount of Service Charges paid by customers during the Class Period, and (ii) the total amount of the Service Charges that arguably should have been distributed to Service Employees and/or were retained by Defendants.  These figures enabled Class Counsel to determine a reliable estimate, based on substantial data, of class-wide damages on this claim.

29.     Class Counsel further reviewed thousands of documents reflecting the total number of hours worked by each Service Employee per night to calculate a total number of hours

worked by Service Employees per workweek during the Class Period.  Based on one-third of these hours, Class Counsel then calculated the potential tip credit shortfall over the course of the entire Class Period, due to Defendants' allegedly unlawful tip pool containing tip-ineligible employees and managers.

30.     After engaging in this extensive discovery, the Parties were due to attend a settlement conference scheduled for December 7, 2015 before this Court.  This settlement conference was then adjourned on consent two weeks prior to the conference, in part because the parties believed they had not exchanged sufficient discovery to make the best use of a settlement conference.  See Dkt. No. 30.

31.      Following this extension, the Parties continued to engage in extensive discovery, including, *inter alia*, exchanging thousands of additional documents.

32.     The Parties then scheduled a second settlement conference before the Honorable James C. Francis IV for February 17, 2016, which the Parties were again forced to adjourn to allow for additional time to conduct settlement-related discovery.  Specifically, Class Counsel identified in excess of 300 Private Events that Defendants had not disclosed on their "Schedule" of Private Events, produced to Plaintiff just days before the settlement conference was to take place.  Defendants represented to Plaintiff that said "Schedule" consisted of each and every Private Event that took place at the DL during the Class Period, yet, upon Class Counsel's extensive cross-check of the "Schedule" with all of the Private Event contracts, proposals, receipts, and correspondence produced by Defendants, Class Counsel identified 300 Private Events not disclosed on the "Schedule."

33.     Following further discovery, negotiations and discussions, the Parties then attended a settlement conference before Judge Francis on March 10, 2016.  Class Counsel

expended significant time preparing for the settlement conference, reviewing the legal and factual merits of the claims to evaluate the strengths and weaknesses of the case, and preparing detailed mediation briefs incorporating extensive damages charts and analyses.

34.     At this conference, which was attended by Ms. Pena in addition to the Managing Partners and part owners of the DL, Defendants Paul Seres and Tomasz Dyskiewicz, the Parties agreed to the framework of a class-wide resolution.  Although additional information could be obtained in discovery if litigation continued, it is extremely unlike that further discovery would have markedly changed the Parties' analyses about the merits and the damages associated with the claims in this case.

35.     Following the agreement, the Parties then drafted a full Agreement, which has been executed by Plaintiff and Defendants.  Ex. A.

**Damages Calculations**

36.     The portion of the Settlement Fund payable to the Class Members will be divided among the Class Members according to the following allocation formula:

37.     Class Members shall receive 0.25 points for each hour worked as a Service Employee at the DL from May 8, 2009 through December 31, 2013.  Class Members shall receive 1.0 points for each hour worked as a Service Employee at the DL starting on January 1, 2014 and working through March 10, 2016. Class Members shall receive an additional 0.5 points for each hour worked as a Service Employee at the DL from May 1, 2013 through July 31, 2015.  Ex. A at § 4.1(A).

38.     The Settlement Fund, after deductions for Court-approved attorneys' fees, costs and expenses, GCG's fees, Enhancement Award, and any other Court-approved expenses or

disbursements, will be divided by the aggregate number of points accrued by all Class Members. Id. at § 4.1(B).

39.     Each Class Member's total points will be multiplied by the Point Value to determine his or her initial "Individual Settlement Amount."  Id. at § 4.1(C).

**Settlement Administration Process**

40.     The Parties have jointly selected GCG to serve as a Claims Administrator.  Id. at § 3.2.  GCG's fees will be paid from the Settlement Fund.  Id. at § 4.3.

41.     The Agreement contemplates the following Class Member release: Each Class Member who does not timely opt-out of the Settlement will release all FLSA (if applicable) and New York State claims, as described more specifically in the Agreement, and will be issued a Settlement check.  Id. at § 3.8(C).

42.     Following the settlement conference, Class Counsel spent significant time negotiating the terms of the formal settlement agreement, and exchanged multiple rounds of revisions with counsel for Defendants.  Class Counsel also spent considerable time drafting and revising a proposed class notice, and devising an equitable settlement allocation formula.

43.     Thereafter, Class Counsel put forth significant efforts drafting, conducting legal research for, and creating and organizing exhibits to a Motion for Preliminary Approval of the Settlement, which was filed on May 31, 2016.  See Dkt. Nos. 37-39.  In the meantime, Class Counsel was in regular communication with Ms. Pena about the status of the settlement.  Id.  On June 16, 2016, the Court granted Plaintiffs' Motion for Preliminary Approval of the Settlement. See Dkt. No. 41.

44.     Thereafter, Class Counsel has been in regular communications with the Settlement Claims Administrator, Garden City Group, Inc. ("GCG") and Class Members about the notice

period.  Class Counsel has fielded many phone calls from Class Members with various questions about the Settlement, including a few Class Members who requested further clarification about how their estimated awards were calculated, which lead to the discovery that the dates of employment for some Class Members were inaccurate, necessitating communications with Defendants' counsel and GCG, as well as award recalculations.

**The Terms of the Settlement, Benefits of Class-Wide Settlement and Risks of Proceeding with Litigation**

45.     Defendants have agreed to pay $385,000.00 into a settlement fund (the "Settlement Fund") to resolve this action on a class basis.  Ex. A at §§ 2.26, 4.1.

46.      The Settlement Fund will be the common claim fund from which (i) all Class Members who participate in the settlement shall receive their allocated share, (ii) Class Counsel will be compensated and reimbursed for expenses, (iii) Plaintiff will receive an enhancement award ("Enhancement Award"), and (iv) the costs associated with administrating the Settlement will be paid.  Id.

47.     Any and all unclaimed settlement funds and amounts remaining in the Settlement Account after the Distribution will be redistributed to Class Members (who did not opt-out of the settlement or fail to redeem their Settlement Checks) in pro-rata shares proportionate to their Revised Individual Settlement Amounts (the "Second Distribution").  Id. at § 4.1(E).

48.     Further litigation without settlement would necessarily result in additional expense and delay for all parties, as well as the Court.  Full discovery would likely include hundreds of thousands of documents, dozens of depositions, expert witness discovery, and almost certainly multiple motions to compel.

49.     Following discovery, there would likely be contested motions for certification of the FLSA collective action and certification of the NYLL class action, and both Parties would

likely move for full or partial summary judgment.  In opposing class certification and/or moving

for decertification, Defendants would argue that differences between the Class Members and the

types of claims that they could assert would preclude class certification.

50.     Subsequently, a complicated trial would be necessary, and would consume

tremendous amounts of time and resources for both sides, as well as require substantial judicial

resources.  Even after a potential judgment at trial, any judgment will likely be appealed, further

extending the litigation.

51.     Plaintiff also anticipates potentially protracted efforts to collect on any potential

judgment entered after a trial and/or appeal.  The Settlement, on the other hand, makes monetary

relief available to Class Members in a prompt, efficient, and relatively risk-free manner.

52.     Based on the information and documents exchanged during targeted discovery,

Class Counsel estimates that should Plaintiff prevail in all regards on all claims with full

liquidated damages on every cause of action, a jury could award up to $1,060,052.52.

53.     This was determined based on Class Counsel's calculations that Plaintiff and Class

Members could recover up to $230,512.50 in minimum wage/tip credit damages; $578,176.72 in

damages for NYLL § 196-d claims for private events; $87,271.06 in damages for NYLL §196-d

claims for tip disgorgement with regard to tips paid to tip-ineligible employees; $154,092.24 in

damages for NYLL § 191 claims for failure to pay for all hours worked; and $10,000.00 in

"Retaliation" damages.  Damages calculation charts are submitted below:

| MINIMUM WAGE/TIP CREDIT DAMAGES | | | |
|---|---|---|---|
| Time Frame | 5/2013 – 12/2013 | 1/2014 – 12/2014 | 1/2015 – 7/2015 |
| Total hours | 14,331 | 40,684 | 20,325 |
| One Third of Hours | 4,777 | 13,561 | 6,775 |
| Tip credit differential | $2.25 | $3.00 | $3.75 |
| Sub-total | $10,748.25 | $40,683 | $25,406.25 |
| TOTAL | **$76,837.50** | | |
| w/ liquidated damages | **$230,512.50** | | |

| 196-d CLAIMS FOR PRIVATE EVENTS | | |
|---|---|---|
| | **Amount of Charge** | **Damages (including liquidated)** |
| **Bucket A ("Administrative Charge or Administrative Fee")** | $149,225.37 | $298,450.74 |
| **Bucket B ("Service Fee")** | $6,854.29 | $13,708.58 |
| **Bucket C ("Gratuity")** | $114,433.67 | $228,867.34 |
| **Bucket D ("Gratuity and Admin Fee")** | $17,409.03 | $34,818.06 |
| **Bucket E ("Operations Fee")** | $1,166.00 | $2,332.00 |
| **TOTAL** | $289,088.36 | **$578,176.72** |

| NYLL 191 CLAIMS – FAILURE TO PAY FOR ALL HOURS WORKED (FULL NYLL CLASS) | | | | |
|---|---|---|---|---|
| Time Frame | Total Hours worked | Unpaid hours | Hourly Rate | Damages |
| 1/2013-5/2013 | 14,331.06 | 1,433 | $5 | $7,165 |
| 6/2013-12/2013 | 14,331.06 | 1,433 | $7.25 | $10,390 |
| 1/2014-12/2014 | 40,701.70 | 4,070 | $8 | $32,560 |
| 1/2015-6/2015 | 20,325.36 | 2,032.54 | $8.25 | $16,768.42 |
| 7/2015-8/2015 | 20,325.36 | 2,032.54 | $5 | $10,162.70 |
| Sub-Total | | | | $77,046.12 |
| TOTAL (with liquidated damages) | | | | $154,092.24 |

| SUMMARY OF WAGE DAMAGES/LIABILITY | | | |
|---|---|---|---|
| CATEGORY | BASE AMOUNT | LIQUIDATED | TOTAL |
| Minimum Wage | $76,837.50 | $153,675 | $230,512.50 |
| 196-d (Private Events) | $289,088.36 | $289,088.36 | $578,176.72 |
| Tip Disgorgement | $43,635.53 | $43,635.53 | $87,271.06 |
| NYLL 191 Claims | $77,046.10 | $77,046.10 | $154,092.24 |
| Retaliation | $10,000 | | $10,000 |
| TOTAL | $496,607.49 | $563,445.00 | $1,060,052.52 |

54.     The more likely scenario is that, even *if Plaintiffs prevail*, Plaintiffs would win on certain claims, but not all.  Assuming a 50% chance of success, the expected return on the actual damages suffered by the class would be approximately $248,000.00.  Even with liquidated damages, and assuming that liquidated damages will be awarded pursuant to both the FLSA and the NYLL,[3] the expected return based on a 50% chance of success would be approximately $530,000.00.  As such, the Parties' agreement to the $385,000.00 settlement amount was a good and substantial result.

55.     Plaintiff has been advised of the potential upside of proceeding on the merits, but believes the Settlement is in the best interests of the Class Members she represents.

56.     While Plaintiff believes she would ultimately establish Defendants' liability, this would require significant factual and legal development, and overcoming any unfavorable evidence.  Plaintiff would have to overcome Defendants' defenses, including, *inter alia*:

- Service Charges were all or mostly distributed to Service Employees, and any shortfall was inadvertent and *de minimis*;

- Defendants acted in good faith and were unaware of the violations;

- Defendants paid Class Members their spread of hours pay owed;

- Defendants' employees told customers that the Service Charge was not a gratuity;

- A reasonable customer did not believe that the Service Charges were gratuities and thus Defendants were not required to distribute them to Service Employees;

- The letter sent to Plaintiff's counsel did not amount to retaliation because the threat was not made to Plaintiff herself and only contemplated the possibility of moving for sanctions pursuant to FRCP 11 rather than making an affirmative threat.

---

[3]     See Huo v. Go Sushi Go 9th Ave., et al., No. 13 Civ. 6573 (KBF), 2014 WL 1413532 at *6 (S.D.N.Y. April 10, 2014) ("This Court finds plaintiff may recover liquidated damages under both statutes because of their diverging purposes (the FLSA liquidated damages provision is compensatory in nature while the NYLL liquidated damages provision is intended to be putative).").

57.      There is also a large risk inherent in asking the Court or a jury to pore over, *inter alia*, "Employee Payroll," "Payroll Worksheets," tip sheets, Private Event proposals, invoices and contracts, and other documents produced in discovery, in order to calculate potential damages. Class Counsel is experienced and realistic, and understands that the outcome at trial and the inevitable appeals process are inherently uncertain in terms of duration.  Plaintiff does not have substantial financial resources to prosecute an individual action.  In addition, Class Counsel is unaware of any pending individual lawsuits arising from the same allegations.  Concentrating the litigation in this Court is desirable because Defendants conduct their business within the jurisdiction of this Court, and many Class Members reside in this jurisdiction.  In addition, the class action device will avoid the waste and delay of potentially repetitive proceedings and inconsistent judgments if certification were denied.

**Plaintiff's Enhanced Award and Service on Behalf of the Class**

58.      Plaintiff Ana Pena is seeking an Enhancement Award in recognition of services rendered to Class Members, which include, *inter alia*: (i) engaging Class Counsel to pursue her claims and the Class claims; (ii) providing documents and information to Class Counsel; (iii) assisting in the preparation of the pleadings; (iv) searching for documents in response to discovery requests; (v) providing information for interrogatory responses; (vi) reviewing and approving other filings; (vii) meeting with Class Counsel at all phases of the litigation; (viii) actively participating in the settlement conference; and (ix) undertaking the risk of retaliation by holding her name out in the caption of a publicly filed Complaint and Amended Complaint. Moreover, Plaintiff faces the risk that new employers would learn that she was the sole named class representative in a lawsuit against her former employer, and take adverse action against her,

a threat that will follower her through every subsequent job that she has.  In light of the foregoing, Ms. Pena will seek an Enhancement Award in the amount of $15,000.00.  Ex. A at § 4.1(H).

**Class Counsel's Efforts to Justify the Attorneys' Fees and Costs Award Requested**

59.     To date, Class Counsel has expended **626.35** hours of attorney, paralegal and administrative support staff time in connection with this matter.  Ex. N.

60.     These hours were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.  Class Counsel used a small team of attorneys and staff at any one time in order to minimize duplication of efforts.

61.     Class Counsel prosecuted this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of tremendous risk.  Class Counsel stood to gain nothing in the event that the case was unsuccessful.

62.     Class Counsel undertook a substantial risk in pursuing this action given the real concerns with respect to collectability because of the inherent risk of the restaurant and nightlife industries' intense competition in New York City.

63.     Indeed, Class Counsel's concerns were borne out by the fact that, at the Settlement Conference before the Court, Defendants made affirmative representations both to Class Counsel and to the Court regarding their ability to pay even the Settlement Amount, let alone anything greater.  Defendants represented that they could not even make the payments required by the Settlement without substantial time to gather the funds to do so, requesting a settlement payment structure that gives Defendants approximately one year from the date of the settlement conference to make payment.  Moreover, the circumstances of this case presented numerous hurdles to a successful recovery because of the fact-intensive nature of proving liability under the applicable

wage laws, and in light of the defenses available to Defendants, which would pose substantial risk as to both liability and damages.

64.     The chart below lists the names of the attorneys, paralegals and support staff at Wigdor LLP who worked on this matter, their job titles, number of hours worked on this matter, respective hourly billing rates, and the total amount of fees.[4]

| NAME | TITLE | HOURS | RATE | TOTAL |
|------|-------|-------|------|-------|
| David E. Gottlieb | Partner | 53.10 | $650.00 | $34,515.00 |
| Renan F. Varghese | Senior Associate | 201.50 | $475.00 | $95,712.50 |
| Rita Lenane | Associate | 78.90 | $350.00 | $27,615.00 |
| Hilary Orzick | Law Clerk | 17.30 | $225.00 | $3,892.50 |
| Tony Guan | Law Clerk | 27.05 | $225.00 | $6,086.25 |
| Annie T. Stanford | Paralegal | 99.10 | $180.00 | $17,838.00 |
| James Meresman | Paralegal | 46.70 | $180.00 | $8,406.00 |
| Janice Byun | Paralegal | 14.00 | $180.00 | $2,520.00 |
| Sara Molinsky | Paralegal | 14.30 | $180.00 | $2,574.00 |
| Gary Madden | Legal  Intern | 74.40 | $0.00 | $0.00 |
| **TOTALS** | | **626.35** | | **$199,159.25** |

65.     In addition, Wigdor LLP also incurred litigation expenses in the amount of **$2,585.86** during this time period.  Exs. N-O.  Moreover, Class Counsel waived various costs incurred in connection with this matter throughout the litigation.

---

[4]     Class Counsel's work on the matter is continuing throughout administration of the settlement.  Therefore, the hours expended to date only partially reflect all the hours Class Counsel will ultimately devote to the successful and final resolution of this action.

66.     My customary hourly rate is $650.00.  The hourly rates of other lawyers and staff are consistent with the customary rates charged for their services and the prevailing rates in the Southern District of New York.  Plaintiff's counsel regularly charges $700.00-850.00 for partner time, $350.00-650.00 for associates' time, depending on seniority, and $180.00 for paralegals' time.  Attached hereto as **Exhibit G** are Representative Redacted Retainer Agreements (with client names and identifying information redacted) reflecting these rates or higher.  The specific rates requested herein for myself have been approved in the Southern District of New York and other courts within the Second Circuit in prior cases.

67.     Class Counsel has a significant number of clients who pay Class Counsel's hourly billable rates, including individuals seeking employment advice and counseling, as well as representation in litigation, and management-side clients in need of both litigation and transactional employment work.  Class Counsel's firm concentrates its practice in several areas of the labor and employment field, including wage and hour, discrimination and harassment claims, as well as contract and severance negotiations.  There is no shortage of hourly billable work at Wigdor LLP.  Our firm turns away hourly paying clients on a regular basis, given our case load and commitments to contingency clients.  Of course, we are also unable to take on all the contingency clients who contact our firm with potentially meritorious cases, and are forced to turn down the vast majority of potential clients who contact us.  In addition, for the contingency work we do take on, we may not necessarily end up getting paid and also run the risk of getting paid at a rate well below our billable hourly rates.  Given this construct, any additional risk associated with taking on contingency clients (such as a court not approving our one-third contingency fee) would make it even more difficult than it already is for us to represent employees (like in this case) who undoubtedly deserve high quality representation but are unable to pay our regular

hourly rates.  Furthermore, on most contingency matters we take on, we use a contingency rate higher than the one-third rate we are requesting here.

68.     In addition, Class Counsel's work on the matter is continuing throughout administration of the settlement.  Therefore, the hours expended to date only partly reflect all the hours Class Counsel will ultimately devote to the successful and final resolution of this action.

69.     The hourly rates of the other lawyers and staff at Class Counsel are consistent with the billing rates at firms that handle individual and multi-plaintiff employment cases.

70.     When the total hours expended in bringing this matter to a resolution are multiplied by Class Counsel's hourly billable rates, the resulting lodestar figure is **$199,159.25**. If the Court were to apply a multiplier of approximately **0.64**, the Court would arrive approximately at Class Counsel's current request of **$128,333.33**.

## QUALIFICATIONS OF CLASS COUNSEL

### David E. Gottlieb

71.     I have been the lead attorney on this matter along with Renan F. Varghese.

72.     I am currently a Partner at Wigdor LLP.

73.     I received a B.A. in political science and philosophy from the University of Arizona in 2002.  I received a J.D. from the University of Miami in 2005.

74.     I am a member of the State Bar of New York and also the New York State Bar Association.  I am admitted to practice in New York, as well as the Eastern and Southern Districts of New York and the Second Circuit Court of Appeals.  Prior to joining Wigdor LLP, I worked at a boutique law firm litigating employment matters, in addition to a variety of other litigation. Since joining Wigdor LLP in 2010, I have been involved in hundreds of employment matters,

including complex wage-and-hour class actions and large multi-plaintiff discrimination cases, and have handled matters as lead counsel from inception through trial and appeal.

75.     In March 2012, I was co-lead counsel in a two-plaintiff discrimination and retaliation trial before The Honorable Leonard D. Wexler.

76.     In addition, I was recognized by *Super Lawyers* in 2014 and 2015.

77.     I have been lead counsel in other actions where class counsel status has been approved and our firm has been approved as class counsel on numerous occasions.

78.     I have been lead counsel in this matter, which has involved significant expenditures of time managing numerous clients and motion practice.  I have also managed and supervised the work of associates and paralegals on this matter.

79.     I have expended 54.2 hours working on this matter.  The hourly rate charged for my services is $650.00 per hour.

**Renan F. Varghese**

80.     Renan F. Varghese is a Senior Associate at Wigdor LLP.  Mr. Varghese received a B.S. in computer engineering, *magna cum laude*, from Rutgers College in 2002, and a J.D. from New York University School of Law in 2005.

81.     Mr. Varghese is admitted to practice in New York, as well as the Second Circuit Court of Appeals and Eastern and Southern Districts of New York.

82.     In addition, Mr. Varghese was recognized by *Super Lawyers* in 2015.

83.     Prior to joining Wigdor LLP in 2015, Mr. Varghese worked for nine years at two boutique labor and employment law firms in New York City where he worked on over a hundred litigations, including representing both employee and management clients.  Mr. Varghese was also a partner at his own law firm from 2013-2015 where he handled litigations and client

representations across a variety of fields, including labor and employment, commercial litigation, non-profit representation, corporate financing and immigration law.

84.     Since joining Wigdor LLP in 2015, Mr. Varghese has been involved in nearly 50 labor and employment matters, including complex wage-and-hour class and collective actions, and large multi-plaintiff discrimination cases.  Mr. Varghese has handled matters at all stages of litigation.

85.     Mr. Varghese has spent hundreds of hours litigating this matter, including managing a team of attorneys and support staff as they reviewed the over 150,000 pages of documents produced during discovery.  Mr. Varghese also has had extensive interactions with the Plaintiff and Class Members in this case, including numerous office meetings and telephone conversations, guiding the Plaintiff and other Class Members through a litigation and settlement process very foreign to many of them, through each step of the action.

86.     Mr. Varghese also reviewed thousands of pages of documents produced in discovery, analyzed nearly a half dozen detailed spreadsheets provided by Defendants, and created dozens of spreadsheets and charts aimed at calculating damages estimates for Plaintiffs' numerous categories of claims.

87.     Mr. Varghese has expended 214.6 hours working on this matter.  The current hourly rate charged for Mr. Varghese's services is $500.00 per hour.

**Qualifications of Other Attorneys and Legal Support Staff**

88.     Rita Lenane is an associate with Wigdor LLP.  Ms. Lenane received her J.D. from Benjamin N. Cardozo School of Law – Yeshiva University in 2015, after receiving her B.A. from McGill University. The hourly rate charged for Ms. Lenane's services is $350.00.

89.     Hilary Orzick is a law clerk (admission pending) at Wigdor LLP. Ms. Orzick

received her J.D. from Benjamin N. Cardozo School of Law – Yeshiva University in 2016, after receiving her B.S. from Cornell University.  The hourly rate charged for Ms. Orzick's services is $210.00.

90.     Tony Guan is a law clerk (admission pending) at Wigdor LLP.  Mr. Guan received his J.D./M.B.A. from Washington University in St. Louis, after receiving his B.A. from the University of Southern California.  The hourly rate charged for Mr. Guan's services is $210.00.

91.     James Meresman is a paralegal with Wigdor LLP.  Mr. Meresman received his B.A. from Washington University in St. Louis.  The hourly rate charged for Mr. Meresman's services is $180.00

92.     Anne T. Stanford was a paralegal with Wigdor LLP.  Ms. Stanford received her B.A. from Washington University in St. Louis.  The hourly rate charged for Ms. Stanford's services is $180.00 per hour.

93.     Janice Byun was a paralegal with Wigdor LLP.  Ms. Byun received her B.A. from Washington University in St. Louis.  The hourly rate charged for Ms. Byun's services is $180.00 per hour.

94.     Sara Molinksy was a paralegal with Wigdor LLP.  Ms. Molinsky received her B.A. from Washington University in St. Louis.  The hourly rate charged for Ms. Molinksy's services is $180.00 per hour.

95.     Gary Madden was a summer intern with Wigdor LLP.  Mr. Madden received his degree from the University of Dublin.  The hourly rate charged for Mr. Madden's services is $0.00 per hour.

96.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Dated: November 8, 2016
       New York, New York

_____
David E. Gottlieb